**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**Case No. 0:26-cv-61962**

TERRY M. DURHAM,

        Plaintiff,

v.

CITY OF TAMARAC, a Florida municipal
corporation,

        Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TERRY M. DURHAM, through undersigned counsel, files this Complaint against Defendant, CITY OF TAMARAC, and alleges:

## JURISDICTION, VENUE, AND COVERAGE

1. This is an action for damages and equitable relief brought under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4335, arising from Defendant's unlawful termination of Plaintiff's employment on account of his military service and obligation to a uniformed service.

2. This Court has jurisdiction pursuant to 38 U.S.C. § 4323(b)(3) and 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

3. Venue is proper under 28 U.S.C. § 1391 because Defendant City of Tamarac maintains its principal offices in Broward County, Florida, and a substantial part of the events giving rise to these claims occurred in Broward County, Florida, within the jurisdiction of this Court.

4.      At all times material hereto, Plaintiff TERRY M. DURHAM was an "employee" within the meaning of USERRA, 38 U.S.C. § 4303(3).

5.      At all times material hereto, Defendant CITY OF TAMARAC was an "employer" within the meaning of USERRA, 38 U.S.C. §§ 4303(4).

6.      At all times material hereto, Plaintiff was a member of a "uniformed service" within the meaning of USERRA, 38 U.S.C. § 4303(17), as an active member of the United States Army Reserve.

## GENERAL ALLEGATIONS

7.      Plaintiff Terry M. Durham is an individual residing in Sunrise, Florida.  He serves as a Specialist (SPC) in the United States Army Reserve, assigned to Headquarters, 143D Mission Support Element, Orlando, Florida.

8.      Defendant City of Tamarac is a Florida municipal corporation with its principal offices located at 7525 NW 88th Avenue, Tamarac, Broward County, Florida 33321.

9.      On or about April 30, 2025, the City hired Plaintiff as a Code Compliance Officer in its Community Development Department at a rate of $24.48 per hour for a forty-hour workweek, yielding an annualized salary of approximately $50,923.

10.      As a new hire, Plaintiff was subject to a six-month probationary period that would have concluded on or about October 30, 2025.

11.      At his two-month probationary evaluation, conducted June 30, 2025, Plaintiff received satisfactory or better ratings in every performance category.  His supervisor, Stephanie Bass (Code Compliance Manager), rated him "Outstanding" in Cooperativeness/Courtesy and "Meets Job Requirements" in all other categories.  Bass noted:  "Terry is meeting the job requirements and I look forward to his continued growth and development in the role."

12.     At his four-month probationary evaluation, conducted August 30, 2025, Plaintiff again received satisfactory or better ratings in all performance categories.  Bass rated him "Exceeds Job Requirements" in Cooperativeness/Courtesy and "Meets Job Requirements" in the majority of other categories, noting:   "Overall Terry meets expectations in most areas for his 4-month probationary period."

13.     At no point during Plaintiff's employment did the City issue him a written disciplinary action, written warning, or formal counseling memorandum.

14.     On July 10, 2025, the Department of the Army issued Plaintiff military orders directing him to report to Fort Cavazos, Texas on October 19, 2025, for a period of active duty of approximately 400 days.

15.     On September 1, 2025, Plaintiff submitted his military deployment orders to Bass. Plaintiff and Bass discussed his schedule and mutually agreed that his last day of work prior to his reporting date would be September 30, 2025.

16.     Following Plaintiff's September 1, 2025 submission of deployment orders, Bass expressed concern about her ability to fill Plaintiff's position on a temporary basis during his deployment and indicated a preference to hire a permanent replacement rather than hold the position open pending Plaintiff's return from military service.

17.     In mid-to-late September 2025, Bass allegedly reviewed vehicle GPS tracking data and case management records for the period September 18 - 24, 2025.  Prior to this review, the City had not advised Plaintiff in writing that vehicle idle-time was subject to monitoring, that any particular threshold of idle time would constitute a policy violation, or that idle-time data would be used as a basis for discipline or termination.

18.     On September 25, 2025, less than four weeks after Plaintiff submitted his deployment orders, Bass and Senior Inspector Dane Hinkle convened a meeting with Plaintiff to discuss the vehicle tracking findings for the first time.  At that meeting, Plaintiff provided contemporaneous explanations for each period in question, including that on September 18 he had taken his mother to a medical appointment that ran longer than expected, and that on other occasions he had been taking photographs for later entry into the case management system.  Bass acknowledged Plaintiff's responses and advised only that there would be "follow-up" regarding the findings.

19.     On September 26, 2025, Plaintiff was summoned to a meeting with Bass and the City's attorney, and was terminated.  The termination paperwork stated only that Plaintiff "did not meet probationary standards"; it identified no specific conduct, policy violation, or incident, and no written warning, disciplinary record, or counseling memorandum was issued at or before the termination meeting.

20.     At the time of termination, Bass explicitly told Plaintiff that he had "a lot on his plate" and that he needed to "focus on his 400 days of deployment ahead" - a direct reference to his impending military service obligation.

21.     The termination occurred four days before the mutually agreed-upon September 30, 2025 last working day, 25 days before the scheduled expiration of Plaintiff's six-month probationary period, and 23 days before his scheduled military report date.

22.     Plaintiff's military service and obligation to a uniformed service was a motivating factor in the City's decision to terminate his employment.  Circumstances evidencing that motivating factor include, without limitation:

(a)   The temporal proximity between Plaintiff's September 1, 2025 submission of deployment orders and his September 26, 2025 termination - a period of 25 days;

(b)   Bass's statement at the time of termination directly referencing Plaintiff's "400 days of deployment ahead";

(c)   Bass's expressed preference, following the submission of deployment orders, to fill Plaintiff's position permanently rather than hold it during his military service;

(d)   The absence of any written discipline, counseling, or formal warning at any point during Plaintiff's nearly six months of employment, through the date his deployment orders were submitted;

(e)   The initiation of vehicle-tracking immediately following Plaintiff's submission of deployment orders, without prior notice that such data would be used as a basis for discipline;

(f)   The termination occurring the day after the first and only meeting at which performance concerns were raised in any recorded form, depriving Plaintiff of any opportunity to correct the cited conduct; and

(g)   The pretextual nature of the stated reason for termination:  the paperwork identified no specific conduct, and the City's own formal evaluations consistently rated Plaintiff satisfactory or better in all performance categories throughout his employment.

23.    Defendant cannot establish by a preponderance of the evidence that it would have terminated Plaintiff's employment absent his military service or his exercise of rights protected under USERRA.

## COUNT I:  UNLAWFUL DISCRIMINATION IN VIOLATION OF USERRA
### 38 U.S.C. § 4311(a)

24. Plaintiff realleges and incorporates the allegations contained in paragraphs 1-23 above as if fully set forth herein.

25. Section 4311(a) of USERRA provides that a person who is a member of, or has an obligation to perform service in, a uniformed service shall not be denied retention in employment by an employer on the basis of that membership, performance of service, or obligation.

26. Defendant terminated Plaintiff's employment on September 26, 2025, constituting a denial of retention in employment within the meaning of 38 U.S.C. § 4311(a).

27. Plaintiff's membership in and obligation to a uniformed service was a motivating factor in Defendant's decision to terminate his employment.

28. Defendant cannot establish by a preponderance of the evidence that it would have terminated Plaintiff's employment in the absence of his military service or obligation.

29. As a direct and proximate result of Defendant's violation of 38 U.S.C. § 4311(a), Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, and other lost compensation.

30. Defendant knowingly failed to comply with USERRA, entitling Plaintiff to liquidated damages.

WHEREFORE, Plaintiff TERRY M. DURHAM respectfully requests that this Honorable Court enter judgment in his favor against Defendant CITY OF TAMARAC; compensate Plaintiff for all lost wages and benefits from the date of termination through the date of judgment; award Plaintiff liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(D), in an amount equal to the greater of $50,000 or the sum of lost wages, benefits, and interest; award Plaintiff his reasonable

attorney's fees, expert witness fees, and other litigation costs pursuant to 38 U.S.C. § 4323(h)(2); and grant such other and further relief as this Court deems equitable and just.

## COUNT II:  UNLAWFUL RETALIATION IN VIOLATION OF USERRA
### 38 U.S.C. § 4311(b)

31.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1–23 above as if fully set forth herein.

32.     Section 4311(b) of USERRA prohibits an employer from discriminating or taking adverse action against any person because that person has taken an action to enforce a protection afforded under USERRA or has exercised a right provided by USERRA, including the right to provide advance notice of required military leave.

33.     By submitting his military deployment orders to his employer on September 1, 2025 and providing advance notice of his obligation to report for active duty, Plaintiff engaged in activity protected under USERRA.

34.     Defendant terminated Plaintiff's employment on September 26, 2025, constituting a materially adverse employment action.

35.     Plaintiff's exercise of his USERRA-protected right to provide notice of required military service was a motivating factor in Defendant's decision to terminate his employment.

36.     Defendant cannot establish by a preponderance of the evidence that it would have terminated Plaintiff in the absence of his protected activity.

37.     As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages, including lost wages, lost benefits, and other lost compensation.

38.     Defendant knowingly failed to comply with USERRA, entitling Plaintiff to liquidated damages.

WHEREFORE, Plaintiff TERRY M. DURHAM respectfully requests that this Honorable Court enter judgment in his favor against Defendant CITY OF TAMARAC; compensate Plaintiff for all lost wages and benefits from the date of termination through the date of judgment; award Plaintiff liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(D), in an amount equal to the greater of $50,000 or the sum of lost wages, benefits, and interest; award Plaintiff his reasonable attorney's fees, expert witness fees, and other litigation costs pursuant to 38 U.S.C. § 4323(h)(2); and grant such other and further relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated:  July 16, 2026

Respectfully submitted,

NIZEL LAW, P.A.

*/s/ Harris Nizel*
HARRIS NIZEL (Florida Bar No.: 0807931)
3440 Hollywood Boulevard, Suite 415
Hollywood, FL 33021
Telephone: (954) 653-8300
Email: harris@nizel.com
*Attorney for Plaintiff*